SAMUEL B. GILPATRICK *versus* THE CITY OF BIDDEFORD.

If the officers of a town, in constructing or repairing a public way, dispose of the waste rocks, or earth, for the benefit of some individual, in such a manner as to improve a private way belonging to him, the repairs so made upon the private way are made for the owner of it and not for the town ; and the town is not thereby estopped from denying its location, in an action to recover for injuries sustained in consequence of defects in such way.

The statute, (§ 62, c. 18 of R. S.,) which estops a party to deny the location of a way, if such party has made repairs thereon within six years before the injury complained of, assumes the existence of a way *de facto*, in actual use at the place of the injury ; and, although the party cannot deny the location of the way where the repairs are made, he may deny that the place where the injury occurred is the same way.

The fact that the way is "continuous" is not the only fact to be taken into consideration, in deciding whether the injury and the repairs are both upon the same way ; that, being a question of fact, is to be determined by the jury and must depend on the circumstances of each case.

The distance from the place of injury to the place of repairs ; the length of time the way has been used ; the locality, whether in a city or in the country ; whether there are intersecting roads or streets, are proper elements to be considered in deciding the question, besides the fact of *continuity*, or apparent oneness of the way.

The acts of a street commissioner of a city, within the scope of the trust committed to him, are *prima facie*, the acts of the city ; whether they are within the general authority conferred upon him is a question for the jury.

EXCEPTIONS from the ruling of WALTON, J., at *Nisi Prius*.

This was an action on the CASE, to recover damages for an injury received by the plaintiff by reason of a defect in a way in the city of Biddeford.

There was evidence tending to prove that, for a series of years, there was a way, wholly in Biddeford, reserved by the proprietors of the lands adjoining, for the use of the lots adjoining, extending from Pool street, a public road in Biddeford, north-easterly, until it entered the north-east end of another public road in said city, called the Nelson road ; and that during these years this reserved way had been used by such travellers as chose to travel over it, without inter-

ruption. That, in this reserved way and near the end of Nelson road, was a steep hill; that, to render the ascent of this hill easier, certain persons, in their private capacity, twelve or fourteen years prior to June, 1863, had filled in a large quantity of stones, which they had levelled and covered with earth, so as to make a better way up the hill, about a rod in width, over which people travelled on foot and occasionally with carriages. That, from the bottom of this hill to Pool street, was about thirty-one rods; the hill was about six rods in its ascent. That no part of the way, from the top of the hill to Pool street, had ever been wrought previous to 1855, but it had been travelled over by such persons as chose to use it. That, in the summer of 1855, and within six years before the injury to the plaintiff complained of, being the first year of the city government of Biddeford, the commissioner of streets of said city, legally appointed, caused work to be done on the north-west portion of said reserved way, from Pool street toward said hill and to the line of one Ladd's lot, near the top of said hill. That he caused ledges in such reserved way to be blasted and excavated, and a portion of the materials removed from such excavations were filled into cavities in other parts of said way, and also caused these excavated and filled portions of the way to be gravelled for a road.

There was evidence tending to prove that some of these materials, being large stones, by the direction of the street commissioner, were dumped upon the hill mentioned, upon the stones and earth which had been placed there a few years before, by the private persons before mentioned, and that these stones, so placed by the direction of the street commissioner, were by his direction levelled and covered with smaller debris and earth taken from the excavations in other parts of the way. That this work upon the way, by the commissioner, was continued for several days, by several laborers and, at least, one ox-team, and payment for the labor was made in the usual way of paying for labor on the streets of the city. That, by this labor, the way from above

the hill to Pool street, was made more passable, and the way down the hill improved; that, after this labor, the way from Pool street to the Nelson road was used by travellers on foot and with teams and carriages, who chose to go there, until 1860, when the way from Pool street to the line of Ladd's lot, near the top of the hill, was located by the city pursuant to statutes.

The defendants introduced evidence tending to prove that the remaining portion of said way, extending from Ladd's lot to the Nelson road, a distance of about six rods, and including the place where the injury happened, had not been established as a public way, or accepted by the city of Biddeford as such; that part of the distance was over and down a steep and rough ledge of rocks, and obviously unsafe for travel; that on application the city had expressly refused to accept or establish it as a public way; that the stones were dumped over the hill and down the ledge, not for the purpose of repairs, but to get them out of the way; and that, in attempting to pass there, the plaintiff was not in the exercise of ordinary care and prudence.

That, on May 18, 1861, the injury occurred to the plaintiff on the hill, and at the place where the stones had been filled in and levelled and covered, by the private persons before mentioned, and that it was caused by some of the stones which had been placed there, either by those persons or the street commissioner.

The presiding Judge instructed the jury that, if repairs were made upon the way in question by the city of Biddeford, within six years before the injury, it would not be competent for the city to deny the location thereof; but, to have that effect, what was done must have been intended for repairs; that if, in dumping the stones blasted out of the ledge, down over the hill, the object was merely to get rid of them, such dumping would not constitute repairs within the meaning of the law. That, if the plaintiff would bring his case within the provisions of R. S., c. 18, § 62, the burden of proof was upon him to show, not only that

repairs were made, but that they were made, either by express authority of the city or by its duly authorized agents, acting within the scope of their authority; that the mere fact, that repairs had been made by a street commissioner upon a way which the city was under no legal obligation at the time to keep in repair, would not be sufficient. That, if a private way had been opened, from Pool street to the bottom of the hill, it would be competent for the city to establish the whole or part of it as a public way; that, if only part of it had been thus established, repairs upon such part would not render the city liable for an injury upon the other part to which such repairs were not intended to apply. That repairs upon one part of a way, not legally established, would not estop the city from denying the location of another part of the same continuous way to which such repairs were not intended to apply, and which the city never intended to accept or to become responsible for.

The plaintiff's counsel requested the presiding Judge to instruct the jury: — That, if the way from Pool street to the bottom of the hill was one continuous way, forming a communication between two public ways of the city, and the city was under no obligation to keep any part of it in repair, but did make repairs upon any portion of such way within six years before the injury was received, it would be liable for the injury. That acts by public officers, in their official capacity, are in law presumed to be rightly done, and the burden of proving the contrary rests upon the party alleging it.

The Judge declined to give the requested instructions. The verdict was for the defendants. The plaintiff excepted.

The questions, thus presented, were argued by

*E. R. Wiggin,* in support of the exceptions.

*J. M. Goodwin, contra.*

The opinion of the Court was drawn up by

DAVIS, J.—This is an action to recover damages occa-

sioned by a defect in one of the streets in the city of Biddeford. In order to prove the location of the street, the plaintiff relied upon evidence of repairs made by the street commissioner upon a continuation of the street. That portion of the street where the repairs were made had been legally located before the accident occurred; but the repairs proved were made before it was located. There was no proof of the location of that part of the street where the plaintiff was injured, except the evidence of repairs upon the other portion of the street. It was not admitted that any repairs were made there; the counsel for the city contending that the street commissioner merely deposited there earth and rock excavated in repairing another street, for the purpose of getting rid of them, not intending thereby to repair the street, or private way, upon which they were thus thrown.

The jury were instructed that, in order to have the effect of estopping the city from denying the location of the street, "what was done must have been intended for repairs; that if, in dumping the stones, which were blasted, down over the hill, the object was merely to get rid of them, such dumping would not constitute repairs, within the meaning of the law."

This instruction was correct. If the officers of a city or town, in constructing or repairing a public way, dispose of the waste rocks or earth for the benefit of some individual, in such a manner as to improve a private way belonging to him, the repairs so made upon the private way are made for the owner of it, and not for such city or town. In doing such work, or in doing the work in the particular manner, the workmen are, *quoad hoc*, the agents of the individual, and not the agents of the city or town. The authority conferred by the city or town contemplates no such purpose or result.

The counsel for the plaintiff requested the Court to instruct the jury "that, if the way from Pool street to the bottom of the hill was *one continuous way*, forming a com-

munication between two public ways of the city, and the city was under no obligation to keep any part of it in repair, but did make repairs upon any portion of such way within six years before the injury was received, it would be liable for the injury."

The jury were instructed "that, if a private way had been opened from Pool street to the bottom of the hill, it would be competent for the city to establish the whole, or a part of it, as a public way; that, if only a part of it had been thus established, repairs upon such part would not render the city liable for an injury upon the other part, to which such repairs were not intended to apply:"

Taking the instruction given, with that which was requested, as it was probably intended, it amounts simply to this,—that repairs upon a way in public use are not *conclusive* evidence of its location *to the entire extent to which it may be* "*continuous.*"

By the R. S., c. 18, § 62, it is enacted that, "when it appears that the party defendant has, within six years before the injury, made repairs on the way or bridge, it shall not be competent for him to deny the location thereof."

The statute assumes the existence of a way *de facto*, in actual use at the place of the injury. The repairs must be shown to have been made upon *such way*. How far from the place of the injury may the repairs be, and still be held to be "on the way?" The instruction requested affirms that *continuity* is the only test; that so far as the way is "continuous," it is the *same way;* and the making of repairs is conclusive evidence of location. The instructions given denied this, and were correct.

A "continuous" way through the entire length of a town may have been opened in successive parts, at different times. A part of it may have been located as a town way; another part by the county commissioners; and another part may be a mere continuation made by the owner of the adjacent land, as a private way. Can it be said to be the fair meaning of the statute that repairs made upon one extreme of

such a way will estop the town from denying the location of the other extreme, at a distance of miles? If not, then the fact that a way is "continuous" is not the only fact to be taken into consideration, in deciding whether the injury and the repairs are both upon the same way. No definite rule can be given for determining this question. It is one of *fact*, for the jury. The statute must be applied reasonably, according to the circumstances of each case. The *continuity*, or apparent *oneness* of the way, from the place of the injury to the place of repairs, is one element to be considered. The length of time during which it has been so used is another. The *distance* between the two points is another, and generally a more important one. But the importance of this will depend upon the locality, whether in a city, or in the country; and whether there are intermediate crossing or intersecting roads or streets. For it is well known that in cities the owners of lots often open private streets, in order to make such lots saleable, long before they are located. And, as they are generally located in short sections, repairs at one point would, of itself, be but slight evidence of location at another.

The instruction requested mistakes the point to which the estoppel provided by the statute is intended to apply. A town cannot "deny the location" of *the way where the repairs are made*. It may deny *that the way where the injury occurred is the same way*. And, if it is proved that the former was legally located, while the latter was not, that will show that the two places are not upon the same way. In that case the repairs at one point are no evidence of location at the other.

Practically there is seldom any difficulty in applying the statute. Repairs within six years can be easily proved, at the place of the injury, or on either side of it. And in cases, like the one at bar, where there is any doubt, the statute operates substantially to change the burden of proof, and places the town in a position where it must show, in order to repel the presumption, not only that there was no

legal location at the place where the injury occurred, but that the way was legally located at the place where the repairs were made. If no legal location is proved at either point, and the way appears to be one and the same at both, the town being estopped from denying the location at one, it may be presumed at the other if not too remote.

The counsel for the plaintiff requested the Court to instruct the jury, "that acts done by public officers, in their official capacity, are in law presumed to be rightly done; and the burden of proving the contrary rests upon the party alleging it."

This request was not pertinent. The question was not, whether repairs made by the street commissioner "in his official capacity" were "*rightly done;*" but whether the repairs were in fact made *in his official capacity*. The request *assumes* this, and raises another question. His *right* to make them might be contested by the owner of the land, in an action of trespass against him; or, by the city, in an action by him to recover pay for his services. He had no such right, unless the way had been legally *located*. The plaintiff did not claim that he otherwise had any such right. The design was not to prove the *right*, which depended on the *location;* — but to prove the *location,* by the *official* act. And the only question, therefore, was, whether he made them "in his official capacity," as the agent of the city. Or, did he make them in his private capacity, for himself, or for some other person?

The ambiguity of the request seems to have misled the Court. The jury were instructed that, "if the plaintiff would bring his case within the provisions of the statute, the burden of proof was on him to show, not only that the repairs were made, but that they were made either by express authority of the city, or by its duly authorized agents, acting within the scope of their authority; and, *that the mere fact, that repairs had been made by a street commissioner, upon a way which the city was under no legal obligation at the time to keep in repair, would not be sufficient.*"

The first branch of this instruction was obviously correct. But the second branch assumes the very point in controversy, — " that the city was under no legal obligation at the time to keep the way in repair;" — when the repairs were proved for the sole purpose of establishing such obligation. Literally it was correct. If it had been conceded that the city was under no legal obligation to keep the way in repair, it would not have been erroneous. But then, there would have been an end of the plaintiff's case. The obligation to repair was the sole ground of any liability for the defect. This being the very point in issue, the instructions should not have assumed its determination in favor of the defendants.

Repairs made upon streets in actual public use, by a street commissioner of a city, may well be presumed, in the absence of any evidence to the contrary, to have been made by the city. His acts, upon matters within the scope of the trust committed to him, are, *prima facie*, the acts of the city. Whether they are within the general authority conferred upon him, is a question for the jury. *Thayer* v. *Boston*, 19 Pick., 511. If he makes repairs upon a private way, not acting in behalf of the city, but for himself, or for another, the city is not liable for his acts, nor is it estopped from denying the location of such way.

As the instructions given, in connection with those requested, may have misled the jury on this point, a new trial must be granted.

APPLETON, C. J., CUTTING, KENT, WALTON, DICKERSON and DANFORTH, JJ., concurred.